CASE 23—ACTION  BY  THE  COMMONWEALTH  AGAINST
THE PAYNE MEDICINE COMPANY.—May 4, 1910.

# Commonwealth v. Payne Medicine Co.

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Affirmed.

1   Licenses—Police Power—Scope—Occupation Tax.—Generally
    speaking, the police power of the state may be invoked to
    control and regulate or even prohibit the doing of anything
    that concerns the health, lives, morals, good order, and gen-
    eral welfare of the community; and under such power the
    Legislature may regulate the sale of patent and other kinds
    of medicine that may and do affect the health of the people,
    and may set apart as special objects of taxation, regulation,
    and control persons engaged in whole or in part in the sale
    of medicines.

2.  Licenses—Police Power—Occupation Tax—Uniformity.—The
    Legislature, in imposing a tax upon a specified occupation un-
    der the police power, must make such tax uniform on all like
    business and occupations when the circumstances and condi-
    tions of each are substantially alike, especially where the
    tax is a license tax.

3.  Words and Phrases—"Merchant."—A "merchant" is    one
    who buys and sells goods of all or any kind.

4.  Licenses—Uniformity—Occupation Tax.—Ky. St. section 4224,
    in so far as it exacts a tax from a person, firm, or corporation
    selling patent medicine, and exempts therefrom merchants
    or druggists selling such medicine, from their places of busi-
    ness, is unconstitutional for lack of uniformity, inasmuch as
    it discriminates between persons engaged exclusively in the
    sale of patent medicines, and persons selling such medicines
    in connection with other goods, while the circumstances and
    conditions of the respective sales are substantially alike.

R. J. MAHONEY for the Commonwealth.

G. ALLISON HOLLAND and GEO. C. WEBB for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The statement filed by a revenue agent in the name of the commonwealth of Kentucky against the Payne Medicine Company set out that its business consisted in "owning, dealing in, buying, and selling, on commission or otherwise, at wholesale or retail, any and all kinds of drugs, nostrums, and patent proprietary medicines; and that from the date of the incorporation of the company in 1906 to the present time, the defendant, not being a merchant or druggist selling from his place of business, has, in Fayette county, been continuously engaged in the occupation of selling patent medicines, and conducted such business during the years 1906 to 1909, inclusive, without having obtained the license required by law for persons engaged in such occupation." And it was sought to subject the company to a license tax of $100 for each of the years mentioned, together with the penalty allowed by law. To this statement, a general demurrer was filed and sustained. The question presented is whether or not the company should be required to pay the license tax.

The first paragraph of section 4224 of the Kentucky Statutes provides that: "Before engaging in any occupation or selling any article named in this subdivision of article 12 of this act, the person desiring to do so shall procure a license and pay the tax thereon as follows." And another paragraph reads: "On each person, firm or corporation selling patent medicine, except a merchant or druggist selling from his place of bus-

iness, one hundred dollars. On each transient vendor or trader of patent, secret or proprietary medicines or nostrums, by whatever name called, whether traded or sold by another or otherwise, one hundred dollars." The proceeding was instituted under this statute. It will be noticed that the statement does not charge that the company is a "transient vendor or trader," but that it was engaged in the business of selling patent medicines at its place of business.

The demurrer was sustained upon the ground that so much of the statute as requires persons engaged in selling patent medicines at an established place of business to pay a license fee of $100, and exempting merchants or druggists who sell such medicines at their place of business from the payment of the tax, was an unconstitutional discrimination against persons engaged in the sale of patent medicines at their place of business. In opposition to this view, it is the contention of the commonwealth that the statute is a police measure, and therefore, although there is a discrimination between persons engaged in the sale of patent medicines, the discrimination is justifiable under the police power of the state. It is further insisted that the act was intended to tax those engaged exclusively in the sale of patent medicines, and that as the Legislature, for revenue or police purposes, has the power to classify persons engaged in various occupations, trades, and business and to impose on persons engaged in each class a reasonable license tax, it was competent to select and tax as a class those engaged exclusively in the sale of patent medicines and exempt those who only sold them in connection with other goods. The police power of the state is far reaching and in a large measure undefined. Generally speaking, it may be invoked to con-

trol and regulate, or even prohibit, the doing of any-
thing that concerns the health, lives, morals, good
order, and general welfare of the community.  As
said in a quotation in Cooley's Constitutional Lim-
itations, page 705: "It is much easier to perceive and
realize the existence and sources of this power than
to mark its boundaries, or prescribe limits to its ex-
ercise."

We have no doubt that the Legislature under the
police power of the state has the authority to control
and regulate the sale of patent and all other kind
of medicines that may and do affect the health of the
people, and the right to set apart as special objects
of taxation, regulation and control persons engaged
in whole or in part in the sale of medicines.  Ken-
tucky Board of Pharmacy v. Cassidy, 115 Ky. 690,
74 S. W. 730, 25 Ky. Law Rep. 102.  But we think
it is clear that the statute under consideration was
not enacted under the police power of the state, and
that the Legislature did not have in  mind  either
the regulation or control of persons engaged in the
sale of medicines.  If control or regulation was the
purpose of the legislation, then it would have pro-
vided for the control and regulation of all persons
who sold patent medicines in any quantity.  There
would be little accomplished in the way of regulation
or control if only one class of persons was controlled
and other classes engaged in the same business left
free to do as they pleased.  But, in the view we have
of the matter, it does not make any difference wheth-
er the  statute be treated as a police or a revenue
measure, or whether its purpose was regulation or
taxation.  Extensive as is the police power, especial-
ly when exercised to regulate, control, or prohibit
a business, trade, or occupation hurtful to the morals,

health, lives, or peace and good order of the community, we do not understand that under this power the Legislature can discriminate in the imposition of license fees between persons engaged in the same business, trade, or occupation similarly situated. In other words, if under this power the Legislature deems it wise to impose a tax upon a specified trade, business, or occupation, such tax must be equal and uniform on all like businesses, trades, and occupations when the circumstances and conditions of each are substantially alike. It would not, to illustrate, be competent to provide that a saloon keeper or a pawnbroker on one street in a first-class city should pay a license fee of $500 annually, and saloon keepers or pawnbrokers on other streets in the same city be required to pay a license tax of $1,000 annually, in the absence of some substantial reason for thus discriminating. Board of Council of Harrodsburg v. Renfro, 58 S. W. 795, 22 Ky. Law Rep. 806, 51 L. R. A. 897. In short, the doctrine of uniformity as to persons engaged in the same business and similarly situated in respect to taxation applies with as much force to police measures as it does to revenue measures. There would be no more reason for discrimination in this respect between persons engaged in a legitimate occupation, although well within the reach of the police power, than there would be for discrimination between persons engaged in any occupation outside the limits of this power. If it is lawful to engage in the business, then all persons engaged under similar circumstances and conditions in such business should be treated alike, and be subject to the same measure of control and regulation in regard to license fees whether the business be regarded as innocent or hurt-

ful.  Under this power many occupations, trades, and professions  are controlled and  regulated by law, when other trades, occupations, and professions are free from such restraint, and the Legislature would have no authority to regulate them.  For instance, the manner in which the saloon keeper or pawnbroker shall conduct his business may be definitely controlled by law, but no one would contend that this power of supervision extended to the dry goods merchant or the hardware dealer.  But this right of governmental superintendency does not carry with it the right  to discriminate,  in the  imposition of taxes, between persons similarly situated engaged in the same trade or business.  And so it is not material whether the statute be considered as a police or a revenue measure, or as a mixture of both, as the same rule must be applied in testing its validity on the point under consideration.

We have many times held that it was competent for the Legislature by general laws for state purposes, as well  as by general  laws delegating the powers to municipalities to divide trades, occupations and professions into classes, and to impose a different license fee upon each class that the trade, occupation, or profession might fairly and reasonably be divided into.   We have also ruled that it was not necessary to impose a license tax upon all trades, occupations, or professions, but that any one or more trade, occupation or profession might be singled out for taxation and all the others not thus selected exempted. But we have also uniformly held that license fees imposed upon any particular trade, occupation, or profession must be uniform in the sense that the same fee must be charged  every person engaged, under substantially similar conditions and circum-

stances, in the particular trade, occupation, or profession that is taxed. Hager, Auditor, v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A. (N. S.) 195; City of Louisville v. Sagalowski, 124 S. W. 339; City of Louisville v. Schnell, 131 Ky. 104, 114 S. W. 742; Strater Bros. Tobacco Co. v. Commonwealth, 117 Ky. 604, 78 S. W. 871, 25 Ky. Law Rep. 1717. Measured by this standard, let us see if upon any reasonable or natural classification this statute in so far as it undertakes to tax a class of persons engaged exclusively in the sale of patent medicines, while exempting merchants and druggists engaged in the same business, although perhaps not exclusively, can be sustained.

At the outset, it may well be observed that the meaning of the sentence in the statute involved in this case is not as clear as it might have been made. It is fair, however, to assume that it was intended to tax persons engaged exclusively in the sale of patent medicines by wholesale as well as retail, and to exempt those who sold such medicines at wholesale or retail in connection with other articles; but it cannot be said that it applies to wholesale dealers alone. Now, for the purpose of illustrating the subject, let us suppose that A., B., and C. are engaged in business in adjoining stores on the same street. A.'s stock of goods consists exclusively of patent medicines; B. is a druggist, and one-third of his stock consists of patent medicines; and C. is a merchant engaged in the sale of various kinds of goods, and one-fourth of his stock is patent medicines. All three of them are merchants in the ordinary and usual meaning of the word, as a "merchant" is one who buys and sells goods, wares, and merchandise of all or any kind and character. 24 Cyc. 478. A., who sells patent medicines

exclusively, is as much a merchant engaged in the sale of merchandise as are B. and C. The kind of merchandise that A. sells is as useful and necessary as that sold in part, if not in whole, by B. and C. Each of them is engaged in a legitimate business. One has as much right to sell patent medicines as the other. The preservation of the public health will not be subservel by regulating one more than the other; and yet A. is singled out for taxation because his entire stock of goods consists of patent medicines, while B. and C., who may carry a larger stock of such merchandise and sell more of them at wholesale and retail, are exempted from taxation. Having this condition before us, we are unable to perceive upon what natural or reasonable theory A. can be taxed, and B. and C. exempted. For all practical purposes they are engaged in the same business under substantially similar circumstances and conditions. And so, if one is taxed because he sells patent medicines, all should be taxed. The arbitray selection of A. for taxation violates the well-established principle that license taxes must be uniform upon all persons engaged in the particular business taxed. We do not doubt the power of the Legislature to select and tax as a class persons engaged in the sale of patent medicines. But when one person selling patent medicines is taxed, all persons engaged in that business under similar circumstances and conditions must be taxed, either by a uniform license fee or a license fee based on the volume of business done. The Legislature may impose license taxes upon persons engaged in any business—for instance, all persons selling dry goods may be placed in a class and taxed. And dry goods merchants may be again divided into wholesale and retail dealers, and a tax

levied upon each class. A distinction for taxation may be made not only between different persons, but between essentially different methods of conducting the same trade or business, as between wholesale and retail dealers selling at a fixed place of business, and dealers from a wagon, or in an itinerant way. The power of the Legislature to select classes of businesses for taxation and to again divide these classes is subject only to the limitation that the classification must be made upon some reasonable practical basis. But, when the classification is made, then no person engaged in the business of the character taxed under substantially similar conditions can be exempted from the operation of the law. And so if the statute taxed persons selling patent medicines by wholesale, and exempted those selling by retail, we would uphold it, as the classification would be based upon substantial and reasonable lines of difference. Singer Mfg. Co. v. Wright, 97 Ga. 114 25 S. E. 249, 35 L. R. A. 497; Banta v. City of Chicago, 172 Ill. 204, 50 N. E. 233, 40 L. R. A. 611; Stull v. De Mattos, 23 Wash. 71, 62 Pac. 451, 51, L. R. A. 892.

If the contention of the commonwealth should prevail, the doctrine of uniformity would be virtually abolished, and some persons engaged in a business might be taxed, and others engaged in the same business under substantially similar conditions and circumstances be exempt from this burden. Thus, the persons who sold boots and shoes exclusively at wholesale or retail might be required to pay a license tax, while the merchant who sold boots and shoes at wholesale or retail in connection with dry goods would be exempt. Manifestly this would be an unjust discrimination against the merchant who sold only

boots and shoes, in favor of his neighbor who sold other articles in connection with boots and shoes. If this was allowable, the law would be giving to one an advantage denied to the other, without any substantial reason for it. It would be taxing one for the benefit of the other, without any corresponding benefit to the person taxed, and conferring without good cause privileges and immunities upon one class of persons that were denied to another. It is not the policy of our laws to thus favor one person, or one class of persons to the detriment of others, when both are engaged in the same occupation and under circumstances and conditions substantially alike. In our opinion, the statute in so far as it imposes a tax upon persons, firms, or corporation selling patent medicines from their place of business is unconstitutional and void.

Wherefore the judgment is affirmed.